

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DSS:CHB/SA *271 Cadman Plaza East*
*Brooklyn, New York  11201*

June 12, 2012

By Hand-Delivery & ECF

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  United States v. Jorge Mejia
>      Criminal Docket No. 10-615 (S-2)(NGG)

Dear Judge Garaufis:

The government submits this letter in advance of the defendant's sentencing and in response to the sentencing letter filed by the defendant on May 15, 2012.  For the reasons stated below, the Court should impose a 60-month sentence consecutive to the 84-month sentence previously imposed in United States v. Jorge Mejia, 09-CR-562.

I.   Background

As the Court is aware, law enforcement has been involved in a long-term investigation into a violent criminal organization responsible for numerous acts of violence and narcotics trafficking in an around the Gowanus Housing Project in Brooklyn, New York.  In October 2010, the leader of that organization, Ronald Herron, and various others, including the defendant, were charged with conspiring to distribute narcotics and unlawfully possessing firearms in connection with that conspiracy.  Early this year, a superseding indictment was returned against Herron for racketeering and various other crimes, including three murders.

   A.   Mejia's Prior Federal Prosecution

The defendant in this case was originally arrested in February 2009 and prosecuted by this Office for being a felon in possession of a firearm.  See United States v. Mejia, 09-CR-562 (RJD).  That case arose after the New York City Police Department ("NYPD") received information from confidential sources that the

defendant was carrying a firearm and threatening people, was involved in shootings and robberies, and was otherwise engaged in gang activity in and around the Gowanus Houses. Mejia had recently been released from prison and was on New York State parole at the time after serving most of a nine-year sentence for a shooting and attempted murder in the Gowanus Houses in 2000. Based on this information, and information that the defendant had himself been shot in November 2008, the defendant's parole officer elected to conduct a parole search of his residence. During that search, the officer recovered a loaded .45 caliber semi-automatic firearm and a large plastic bag containing marijuana.

Mejia moved to suppress the search of his residence. After a hearing, during which Mejia's parole officer and a NYPD sergeant testified, then-Chief Judge Dearie denied the motion. Shortly thereafter, Mejia pleaded guilty, pursuant to an agreement with the government, to being a felon in possession of a firearm. Shortly thereafter, the defendant was indicted for his role in the distribution of narcotics in and around the Gowanus Houses.

In March 2011, Judge Dearie sentenced Mejia based on his guilty plea to a term of imprisonment of 84 months. The defendant had sought a three-year term of imprisonment, but the government strongly opposed Mejia's request, noting, among other things, that Mejia had previously attempted to shoot and kill someone in the Gowanus Houses, that he committed the offense while on parole, and that he had been involved in another shooting in November 2008.

B.  The Instant Prosecution

As noted above, in October 2010, after the defendant had pleaded guilty to being a felon-in-possession of a firearm but before he was sentenced for that offense, the defendant, Ronald Herron, and various others were charged with conspiring to distribute crack cocaine in and around the Gowanus Houses and unlawfully possessing firearms in connection with that drug conspiracy. Among other things, the evidence supporting this prosecution included controlled buys of crack cocaine from members of the organization as well as numerous cooperating witnesses who were themselves members of Herron's organization and who regularly distributed crack cocaine and possessed, carried, and used firearms in support of the organization and its distribution of narcotics. In addition, members of the organization created music videos and public internet postings about the organization. For example, in one such internet

posting, the defendant was interviewed in the hospital after he had been shot in November 2008. During the video, the defendant, Herron and other members of Herron's organization made threats against Mejia's assailant and referenced "the cemetery." Similarly, after Mejia was arrested in February 2009 and prosecuted federally for the unlawful possession of a firearm, Herron released a music video in which Herron made reference to the defendant as being a member of his "murder team" and specifically stated that the defendant "did 8 but now they trying to give him 10, but when he comes home from the feds he'll be shooting [people] again."

In November 2011, the defendant pleaded guilty, pursuant to an agreement, to unlawfully possessing a firearm in connection with narcotics trafficking activity. In the agreement, the government expressly noted that "in accordance with 18 U.S.C. § 924(c)(1)(D)(ii), ... the sentence [on the instant offense] should run consecutive to the defendant's 84-month sentence in United States v. Jorge Mejia, 09-CR-562 (RJD). The agreement further provided that the defendant waived his right to appeal or otherwise challenge his sentence if the Court sentenced him to 144 months or below.

C.  Pre-Sentence Investigation Report

In February 2012, the Probation Department prepared a pre-sentence investigation report ("PSR") for the instant prosecution. The report concluded that, based on the defendant's plea, the defendant was subject to a mandatory sentence of 60 months and that the Court should impose that sentence to run consecutive to the undischarged term of imprisonment for the other federal prosecution. See PSR at ¶ 70 & 18 U.S.C. 924(c)(1)(D)(ii). In addition, the PSR reflected that in 2000, Mejia had been convicted of attempted murder based on a shooting in 423 Baltic Street, a building in the Gowanus Houses that was the locus of Herron's narcotics trafficking operation. See PSR at ¶ 32-33. The PSR further reflected numerous disciplinary violations associated with Mejia's eight-year sentence for that crime, see PSR at ¶ 35, as well as violations associated with Mejia's pending federal incarceration. See PSR at ¶ 51.

D.  Possible Witness Intimidation

In March 2012, shortly before the defendant was scheduled to be sentenced, the government filed a letter with the Court related to the defendant's possible involvement in acts of obstruction of justice and witness tampering. The government had received information that, while in custody, the defendant was

3

involved in acts of obstruction of justice and witness tampering in connection with the pending case against Herron. On March 9, 2012, the Court held a status conference in the matter and advised the defendant that any such acts would "go to the heart of the criminal justice system" and strongly encouraged the defendant not to engage in any activity that might be associated with such misconduct. The Court also adjourned the defendant's sentencing to June 2012.

II. <u>The Defendant's Sentencing Arguments</u>

By letter dated May 15, 2012, the defendant requests that the Court impose the mandatory 60-month sentence on the instant offense to run concurrently with the 84-month sentence on the prior federal prosecution. The defendant contends that the issue is one of "fundamental fairness" because, he claims, the instant offense and the felon-in-possession case involve the "same weapon, and its possession and use occur in the same period of time." According to defendant, he is effectively being punished twice for the same offense -- possessing a firearm as a felon and in connection with narcotics activity.

The defendant further objects to certain derogatory information in his PSR, including that he served as an "enforcer" on behalf of Herron's organization and that the testimony by law enforcement regarding the circumstances leading up to his 2009 is based on unreliable hearsay.

III. <u>The Government's Response</u>

The Court must impose a 60-month sentence consecutive to the defendant's pending 84-month sentence. As noted, 18 U.S.C. § 924(c)(1)(D)(ii) states:

> Notwithstanding any other provision of law ... no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

Indeed, in <u>United States v. Gonzales</u>, 520 U.S. 1, 11 (1997), the Supreme Court addressed this exact provision and rejected an argument that a district court could run a federal sentence under section 924(c) concurrent with a state sentence that was related

to and involved the same criminal activity that was the subject of the pending federal conviction.  In Gonzales, the Supreme Court expressly held that "the plain language of 18 U.S.C.(c) forbids a federal district court to direct that a term of imprisonment under that statute run concurrently with any other term of imprisonment, whether state or federal."  The defendant's sentencing argument is thus explicitly barred by federal law and Supreme Court precedent.  Moreover, a concurrent sentence here would be contrary to Congressional intent to broaden the scope and enhance the penalties associated with firearm offenses whenever a defendant possesses a firearm in connection with a violent crime or a drug trafficking offense.  See also Abbott v. United States, 131 S. Ct. 18, 26-30 (2010) (noting that mandatory consecutive sentences reinforce congressional intent "that all § 924(c) offenders shall receive additional punishment for the violation of that provision" and rejecting interpretation that would limit enhanced sentencing in cases involving other firearm violations, like felon-in-possession cases).

      The defendant's other objections to the information in the PSR are similarly misplaced.  With regard to the information supporting the defendant's original arrest in February 2009, two law enforcement officers testified at the suppression hearing regarding the information underlying the parole search of the defendant's residence, including that the defendant was carrying a firearm and threatening people, was involved in shootings and robberies, and was otherwise engaged in gang activity in and around the Gowanus Housing Projects in Brooklyn.  See Tr. of June 17, 2010 Hearing at 20 ("Mejia was in possession of a firearm, and using that firearm to threaten other individuals"), id. at 46 ("Mejia was in possession of a firearm and was threatening individuals with it on the street"); id. at 67 ("he was walking around the streets, kind of being a menace ... doing robberies ... shots were being fired by him"); see also id. at 36, 75-76.  A copy of the transcript of their testimony is attached.  Moreover, as noted above, there is ample record evidence, including the internet postings referenced above as well as testimony from cooperating witnesses, that supports the defendant's role as an enforcer in Herron's criminal organization.  The government is be prepared to play these videos for the Court at sentencing.

IV.     Conclusion

For the reasons stated above, the Court should impose a 60-month sentence consecutive to the 84-month sentence previously imposed in <u>United States v. Jorge Mejia</u>, 09-CR-562.

          Respectfully submitted,

          LORETTA E. LYNCH
          United States Attorney

By:        /s/
          Carter Burwell
          Assistant U.S. Attorney
          (718) 254-6313

cc:  Clerk of Court (by ECF)
     Robert Moore, Esq.